E-FILED
Wednesday, 30 March, 2011 09:22:19 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Ricky Bell,
    Plaintiff,

v.         09-3007

R. C. Scholtz, et al.,
    Defendants.

MEMORANDUM OPINION AND ORDER

    Before the court are Plaintiff's summary judgment motion [26], Defendants, R. C. Sholtz and Wexford Health Sources Inc.'s response [45], Plaintiff's reply [47] and Defendants' second amended response [62]. Plaintiff moves for summary judgment pursuant to Fed. R. Civ. Pro. Rule 56 and U.S.C.D. L. R. 7.1D.

Standard

    Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

    "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(c). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply

1

evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc.*, 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659. It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. Keri v. Barod of Trustees of Purdue University, 458 F.3d 620, 628 (7th Cir.2006)(*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997).

Background

On February 20, 2009, this court entered a Merit Review Order regarding Plaintiff's complaint. This court ruled that the Plaintiff stated one claim under the Eighth Amendment, that Defendants were allegedly deliberately indifferent to Mr. Bell's serious medical (dental) needs. These Defendants subsequently filed an answer to the Merit Review Order denying those allegations. At the time Plaintiff file his summary judgment motion discovery in this matter was still going on. In response to his summary judgment motion [26] Defendants asserts that Plaintiff's claim of deliberate indifference to a serious medical need is without factual support.

In his summary judgment motion [26] argues that he is entitled to summary judgment against Defendants Scholz and Wexford. Plaintiff's motion raises four separate issues: First, Plaintiff claims that Dr. Scholz was deliberately indifferent to Plaintiff's longstanding chronic periodontal disease. Defendants argue that Plaintiff is not entitled to summary judgment on this issue because Plaintiff has failed to establish that his longstanding chronic periodontal disease constitutes a serious medical need. Further, Defendants argue that Plaintiff has not established that his condition was a Category I condition in need of urgent medical care. Defendants assert that Dr. Scholz is required by the Illinois Department of Corrections' Administrative Directives to prioritize his dental care and to provide treatment to those inmates in the worst condition first. That is what he did in this case, and thus summary judgment must be denied. Second, Plaintiff argues that he is entitled to summary judgment on his policy, practice and custom claim against Wexford and Dr. Scholz. The court's merit review orders makes no mention of any type of Monell claim and specifically strikes any claims against Defendants in their official capacity. Furthermore, a Monell claim can only survive if an employee of the corporation is found liable for violating the Plaintiff's constitutional rights. Here, Defendants argue that Plaintiff fails to show that Dr. Scholz was deliberately indifferent to his serious medical (dental) need and

therefore Plaintiff's summary judgment motion regarding his Monell claim must also fail. Third, Plaintiff argues that Dr. Scholz was deliberately indifferent to his toothache in June of 2007. Defendants assert that the facts of this case tell quite another story. Rather than being deliberately indifferent, Plaintiff was treated promptly after a request to see the dentist was received from Mr. Bell and an extraction was prioritized to alleviate Mr. Bell's pain. Fourth, Plaintiff argues that Dr. Scholz was deliberately indifferent to his need for a filling. Defendants argue that Plaintiff fails to establish that the need for a filling is a serious medical need. Further, Defendants argue that Plaintiff fails to establish that Dr. Scholz was deliberately indifferent. Defendants advise the court that Mr. Bell was placed on the list to receive a filling and was not ignored. Defendants request that Plaintiff's summary judgment motion be denied.

Undisputed Material Facts[1]

Pl's Fact 1.   The plaintiff has a condition known as chronic periodontal disease.
Pl's Fact 2    Defendant Robert Scholz was a dentist at the Western Illinois Correctional Center ("Western) between April 1, 2007 through June 5, 2009.
Pl's Fact 4:   Defendant Scholz did not treat the plaintiff's longstanding chronic periodontal disease for the entire time plaintiff was at Western.
Pl's Fact 6    Defendant Scholz did not do teeth cleanings at Western between April 1, 2007 through June 5, 2009.
Pl's Fact 7    There was no dental hygienist on site at Western during the time of April 1, 2007 through June 5, 2009.
Pl's Fact 8    The contract between Wexford and the Illinois Department of Corrections 'IDOC' did not require a dental hygienist to be on site at Western between April 1, 2007 through June 5, 2009. Plaintiff's Exhibit B, pg. 5, ¶14, not pg. 4.
Pl's Fact 10   Plaintiff's tooth #18 was extracted at Plaintiff's request and with his consent on July 3, 2007. (Plaintiff's Exhibit B, pg. 4, ¶11).
Pl's Fact 12   Defendant Scholz worked 16 hours per week during the time frame of April 1, 2007 through June 5, 2009.
Pl's Fact 13   On October 8, 2008 at Plaintiff's biennial exam, Dr. Scholz found tooth #31 to be in need of a filling. (Scholz Aff., Ex. 1, ¶25).

---

[1] Pl's Facts 15 is not supported by any evidence. Pl's Fact 19 is not supported by any competent evidence and is therefore inadmissible. Facts 27-32 [26] are supported solely by Plaintiff's Exhibit A, an affidavit from Plaintiff. Pursuant to Federal Rule of Civil Procedure 56(e)(1), "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit." Plaintiff has not demonstrated that he is competent to testify to the medical and dental conclusions and diagnoses he sets forth in these paragraphs. Rather, Plaintiff relies on the bare assertion in his affidavit. Plaintiff is not a qualified medical expert and is incompetent to offer such testimony and therefore it is excluded.

Pl's Fact 25    Even after the Plaintiff saw Defendant Scholz on June 27, 2009, the Plaintiff still suffered excruciating pain right up to and including July 3, 2009.
RESPONSE: Dr. Scholz saw Plaintiff on June 27, 2009, and made it a priority to have his tooth extracted and did so; the extraction was performed on July 3, 2009. (Scholz Aff., Ex. 1, ¶¶22 – 23).

Disputed Material Facts

Pl's Fact 3     For two and a half years, the plaintiff sought treatment for his longstanding chronic periodontal disease from Defendant Scholz.
RESPONSE: Defendants state the phrases "sought" and "treatment" are vague and ambiguous. Further, Pl's fact 3 does not specify the specific treatment that was sought or when and that this statement is not supported by any competent evidence or proper citation to the record and is therefore inadmissible. Nothing in Plaintiff's Exhibit B, page 3, stands for the proposed material fact as set forth in Plaintiff's Fact No. 3.

Pl's Fact 11    There was no system in place at the Western Illinois Correctional Center during the time frame of April 1, 2007 through June 5, 2009, where an inmate or plaintiff could have signed up for emergency dental treatment and subsequently receive treatment the next day, or even that week.
RESPONSE: This statement is not supported by any competent evidence and is therefore inadmissible. Nothing in Plaintiff's Exhibit J, pg. 1, stands for the proposed material fact. Further, Plaintiff's Exhibit J is an Illinois Department of Correction Offender's Grievance form. The Defendants are not responsible for the IDOC's grievance and/or emergency grievance system. (See Scholz Aff., Ex. 1, ¶¶ 29 - 30).

Pl's Fact 13    Plaintiff had a damaged tooth which needed a crown while at Western.
RESPONSE: Plaintiff's statement that a crown needed to be placed on his tooth is not supported by any competent evidence and is therefore inadmissible. Furthermore, Plaintiff's tooth #31 did not require a crown. (Scholz Aff., Ex. 1, ¶25).

Pl's Fact 17    The plaintiff informed Defendant Scholz, through his grievance written on 10-19-07 plaintiff had been previously told that plaintiff had periodontal disease, that many of plaintiff's teeth are very loose and are becoming worse without a professional cleaning.
RESPONSE: Plaintiff's Exhibit G is an Illinois Department of Corrections Offender's Grievance form which appears to have been completed by Plaintiff and dated October 19, 2007. Dr. Scholz denies that this grievance, as it appears, came to him and further denies that he is officially part of the grievance response procedure. (Scholz Aff., Ex. 1, ¶¶24, 29).

Pl's Fact 18    Defendant Scholz did not treat the plaintiff due to a backlog and a staff shortage.
RESPONSE: Dr. Scholz denies that Plaintiff was denied treatment. There is nothing in Plaintiff's Exhibits H and I or Exhibit A, page 16, which shows that Dr. Scholz did not treat the Plaintiff. Exhibits H and I concern a grievance

4

|            | regarding periodic cleaning. Mr. Bell did not have a significantly serious condition to warrant immediate treatment for his complaint, wanting his teeth cleaned. There were many other inmates who had immediate and emergent problems that needed to be addressed first. (Scholz Aff., Ex. 1, ¶¶ 15 - 16). The Department of Corrections has Administrative Directives which categorize dental problems from Category I to Category VI. (Scholz Aff., Ex. 1, ¶7). Mr. Bell's longstanding/chronic periodontal disease was not a Category I condition. (Scholz Aff., Ex. 1, ¶15). At that time, Dr. Scholz needed and was required to provide care and treatment to those patients who suffered from Category I conditions first. (Scholz Aff., Ex. 1, ¶¶7, 10, 15 – 16). |
|---|---|
| Pl's Fact 22 | The plaintiff's periodontal disease has become worse, and still worsening every day without any sort of treatment by the dental staff.<br>RESPONSE: This statement is not supported by any competent evidence and is therefore inadmissible. Plaintiff has not offered any verifying medical evidence that his longstanding chronic periodontal disease is worsening. Further, the fact that Plaintiff's condition continues to worsen, as he claims to still not be receiving the treatment he desires, is immaterial and irrelevant to whether Dr. Scholz was deliberately indifferent to Plaintiff's serious medical (dental) needs as Dr. Scholz cannot be held liable for failure to provide dental care when Plaintiff is no longer an inmate in a prison where Dr. Scholz works. Plaintiff is presently incarcerated at Pinckneyville Correctional Center. (Plaintiff's Ex. A, ¶2). |
| Pl's Fact 23 | Plaintiff's periodontal disease is consistently causing plaintiff's blood pressure and/or high cholesterol to rise above safe threshold levels and threatens the plaintiff's life.<br>RESPONSE: This statement is not supported by any competent evidence and is therefore inadmissible. Plaintiff has not offered any verifying medical evidence that his alleged periodontal disease is causing his high blood pressure and/or high cholesterol to rise above safe threshold levels. Rather, Plaintiff relies on the bare assertion in his affidavit that this is the case. Plaintiff is not a qualified medical expert and is incompetent to offer such testimony and therefore it must be excluded. Further, at no time did Dr. Scholz consider Mr. Bell's longstanding/ chronic periodontal disease to be a serious medical need in need of immediate medical treatment. (Scholz Aff., Ex. 1, ¶17). |
| Pl's Fact 24 | The plaintiff suffered excruciating pain for approximately 19 days as a direct result of defendant's policy, custom, or practice of not providing a system where plaintiff can sign up for and receive emergency dental treatment.<br>RESPONSE: This statement is not supported by any competent evidence and is therefore inadmissible. Dr. Scholz is not a policymaker and therefore does not have any policies, customs, or practices. (Scholz Aff., Ex. 1, ¶¶ 9 – 30). Furthermore, Dr. Scholz operates under the Illinois Department of Corrections' Administrative Directive regarding dental care to be provided to inmates. (Scholz Aff., Ex. 1, ¶7). Further, Dr. Scholz does not make the policy for Western 's emergency grievance procedures. (Scholz Aff., Ex. 1, ¶30). Defendants are not officially part of the grievance response procedure. (See Scholz Aff., Ex. 1, ¶29). |

Immaterial Facts

| | |
|---|---|
| Pl's Fact 5 | Defendant Scholz never coordinated any of his efforts to treat the plaintiff's longstanding chronic periodontal disease with Dr. Lowell J. Brown, who was treating the plaintiff's high blood pressure and high cholesterol.<br>RESPONSE: Whether Dr. Scholz made any effort to "coordinate any of his efforts to treat" the Plaintiff with Dr. Brown, or anyone else, is immaterial and irrelevant to whether Dr. Scholz was deliberately indifferent to Plaintiff's serious medical (dental) needs. Dr. Scholz treated Mr. Bell for his acute problems. (Scholz Aff., Ex. 1, ¶¶9, 22, 23, 25). |
| Pl's Fact 9 | Plaintiff submitted an emergency grievance directly to the warden of Western on June 21, 2007 expressing that he was in extreme pain due to a very bad toothache, and that none of the officers, lieutenants, medical technicians would assist him in getting emergency dental assistance."<br>RESPONSE: Defendants acknowledge that Plaintiff's Exhibit J is an Illinois Department of Corrections Offender's Grievance form which purports to be dated June 21, 2007. Whether Plaintiff submitted this grievance on June 21, 2007, and/or submitted it directly to the warden of Western, is not clear from the face of the document and not supported by any other competent evidence and therefore is inadmissible. Further, Dr. Scholz is not officially part of the grievance response procedure. (Scholz Aff., attached as Ex. 1,, ¶¶29 - 30). Immaterial Facts |
| Pl's Fact 14 | Defendant Scholz examined the plaintiff and diagnosed the plaintiff as needing a filling placed in the tooth on 10-8-08. Plaintiff still has not had this tooth or crowned as of this date.<br>RESPONSE: [For the third time] Defendant admits that Plaintiff was seen by Dr. Scholz on October 8, 2008, who diagnosed Plaintiff as needing a filling in tooth #31. Plaintiff was placed on a wait list to obtain the same. (Scholz Aff., Ex. 1, ¶26). Plaintiff is no longer at Western Illinois Correctional Center. (Plaintiff's Exhibit A, ¶ 2; Plaintiff's Fact Nos. 2, 6 – 8, 12 – 13). Therefore, the fact that Plaintiff's tooth still has not been filled or crowned is irrelevant to whether Dr. Scholz was deliberately indifferent to Plaintiff's serious medical (dental) need as Dr. Scholz is no longer in contact with Mr. Bell. (Scholz Aff. Ex. 1, ¶ 28). |
| Pl's Fact 16 | Wexford medical personnel had nurses coming into and out of the Western housing units, dispensing medication everyday from April 1, 2007 through June 5, 2009."<br>RESPONSE: Whether nurses were in the housing units dispensing medications on a daily basis is immaterial and irrelevant to whether Dr. Scholz was deliberately indifferent to Plaintiff's serious medical (dental) needs. |
| Pl's Fact 20 | Plaintiff's high blood pressure and high cholesterol medication has been increased by the plaintiff's current treating physician, Dr. Ovadina.<br>RESPONSE: Plaintiff's high blood pressure and high cholesterol medication are immaterial and irrelevant to whether Dr. Scholz was deliberately indifferent to Plaintiff serious medical (dental) needs. Dr. Scholz is a dentist and formerly treated Mr. Bell for his acute dental problems.(Scholz Aff., Ex. 1, ¶¶9, 22, 23, 25). |

Pl's Fact 21  That plaintiff has had one incident where plaintiff passed out in the early morning hours while urinating on October 20, 2009.
RESPONSE: Where Plaintiff passed out is immaterial and irrelevant to whether Dr. Scholz was deliberately indifferent to Plaintiff's serious medical (dental) needs. Furthermore, the incident alleged to have occurred on October 20, 2009, after Plaintiff had left Western Illinois Correctional Center. (See Plaintiff's Fact No. 2).

Pl's Fact 26  Plaintiff's dental chart reflects the fact that plaintiff has advanced periodontal disease.
RESPONSE: Whether Plaintiff has "advanced" periodontal disease or longstanding chronic periodontal disease is immaterial and irrelevant to whether Dr. Scholz was deliberately indifferent to Plaintiff's serious medical (dental) needs. Dr. Scholz treated Mr. Bell for his acute dental problems. Mr. Bell did not have a significantly serious condition to warrant immediate treatment for his complaint, wanting his teeth cleaned. There were many other inmates who had immediate and emergent problems that needed to be addressed first. (Scholz Aff., Ex. 1, ¶¶15 – 16). The Department of Corrections has Administrative Directives which categorize dental problems from Category I to Category VI. (Scholz Aff., Ex. 1, ¶7). Mr. Bell's longstanding/chronic periodontal disease was not a Category I condition. (Scholz Aff., Ex. 1, ¶15). At that time, Dr. Scholz needed and was required to provide care and treatment to those patients who suffered from Category I conditions first. (Scholz Aff., Ex. 1 ¶¶7 – 8, 15 - 16).

Defendants' Additional Material Facts

1. Dr. Scholz is a dentist licensed to practice in the State of Illinois. (Scholz Aff., Ex.1, ¶1).
2. At certain times relevant to Plaintiff's Complaint, Dr. Scholz worked at the Western Illinois Correctional Center. (Scholz Aff., Ex. 1, ¶2).
3. In the course of his practice as a dentist at the Western Illinois Correctional Center, Dr. Scholz did see an inmate by the name of Ricky Bell. (Scholz Aff., Ex. 1, ¶4).
4. In his practice as one of the dentists at Western Illinois Correctional Center, Dr. Scholz took care of the inmates' teeth in the order of worst to best pursuant to the Administrative Directives of the Illinois Department of Corrections. (Scholz Aff., Ex. 1, ¶6).
5. The Department of Corrections has Administrative Directives which categorize dental problems from Category I to Category VI. The Administrative Directives require that dental care be prioritized pursuant to these Categories; Category I conditions are considered "Emergency Treatment," and descend to Category VI conditions defined as "No symptoms or apparent need for dental treatment related to the type of assessment or inspection performed." (Scholz Aff., Ex. 1, ¶7).
6. Between April 1, 2007 and June 5, 2009, Dr. Scholz treated almost exclusively Category I and II conditions given the large number of inmates at Western Illinois Correctional Center with immediate and emergent dental problems. (Scholz Aff., Ex. 1, ¶8).
7. On April 21, 2007, at 9:45 a.m., Mr. Bell came to see Dr. Scholz for dental care. Dr. Scholz diagnosed him with an area of decay on tooth #18 and offered to put him on the

7

list for an extraction of that tooth. (Scholz Aff., Ex. 1, ¶9).
8. Mr. Bell did not want to be put on the list. (Scholz Aff., Ex. 1, ¶9).
9. On May 1, 2007, Dr. Scholz responded to a grievance regarding Mr. Bell's complaints that he was not given a crown or a cleaning. Dr. Scholz advised that he is not authorized to do crowns on posterior teeth for inmates in the Illinois Department of Corrections. At that time, Dr. Scholz also explained that the tooth in question, tooth #18, was not suitable for a crown even if it was authorized. Dr. Scholz also explained that, at that time only Category I emergencies and after that Category II conditions were being treated, pursuant to the Administrative Directives of the Department of Corrections. (Scholz Aff., Ex. 1, ¶10).
10. It was explained to Mr. Bell that dentists generally do not provide regular cleanings and there was no dental hygienist at Western Illinois Correctional Center to perform that function. (Scholz Aff., Ex. 1, ¶11).
11. Periodontal disease is a condition common in the general population and even more common to inmates. (Scholz Aff., Ex. 1, ¶12).
12. Inmates, in general, tend to have poor dental hygiene which contributes to the development of periodontal disease. (Scholz Aff., Ex. 1, ¶13).
13. Mr. Bell's longstanding chronic periodontal disease was a chronic, not acute, condition, most likely brought on by years of poor dental hygiene. (Scholz Aff., Ex. 1, ¶14).
14. Mr. Bell's longstanding chronic periodontal disease was not a Category I condition. At no time while Mr. Bell was an inmate at Western Illinois Correctional Center and Dr. Scholz was a dentist there, did Mr. Bell have an immediate need for a teeth cleaning[2]. (Scholz Aff., Ex. 1, ¶15).
15. Mr. Bell's longstanding chronic periodontal disease was not a significantly serious condition to warrant immediate treatment for his complaints. There were many other inmates who had immediate and emergent problems that needed to be addressed first. (Scholz Aff., Ex. 1, ¶16).
16. At no time did Dr. Scholz consider Mr. Bell's longstanding chronic periodontal disease to be a serious medical need in need of immediate medical treatment. (Scholz Aff., Ex. 1, ¶17).
17. Longstanding chronic periodontal disease in Mr. Bell's form was not an emergent medical need, nor was it the type of condition that was an imminent risk of causing him substantial harm. (Scholz Aff., Ex. 1, ¶18).

---

[2]Plaintiff attempts to dispute Defendants' Additional Facts 14 merely by saying he is disputing whether his condition was a Category I condition. He points to his affidavit and medical records. He points to some medical records that do not show that he was diagnosed as a Category I. Plaintiff's disputes to Defendants Fact 16 and 17 are not supported by any competent evidence and is therefore inadmissible. Plaintiff has not demonstrated that he is competent to testify to the medical and dental conclusions and diagnoses he sets forth in these paragraphs. Rather, Plaintiff relies on the bare assertion in his affidavit. Plaintiff is not a qualified medical expert and is incompetent to offer such testimony and therefore it is excluded.

18. On June 25, 2007, the health care unit at Western Illinois Correctional Center received a request slip from Mr. Bell requesting an extraction of a tooth. This request slip was the only request slip the Western Illinois Correctional Center dental department received from Mr. Bell in June of 2007, and the only request slip received from Mr. Bell at any time related to a toothache[3]. (Scholz Aff., Ex. 1, ¶19).
19. The only other request slip received by the dental department from Mr. Bell was received on April 18, 2007, regarding Mr. Bell's desire to have a crown placed on a tooth. (Scholz Aff., Ex. 1, ¶19).
20. In June of 2007, Dr. Scholz was contracted to work 16 hours a week at Western Illinois Correctional Center. Dr. Scholz worked on Tuesday and Wednesday of each week. (Scholz Aff., Ex. 1, ¶20).
21. Following the dental department's receipt of Mr. Bell's request slip on June 25, 2007, the first day Dr. Scholz worked was Tuesday, June 26, 2007. Dr. Scholz also worked on Wednesday, June 27, 2007. (Scholz Aff., Ex. 1, ¶20).
22. Upon receipt of an inmate request slip, it is Dr. Scholz's usual practice to put an inmate on the call list to be evaluated the following day. To maximize his time, Dr. Scholz evaluates inmates who have requested treatment, while other inmates are preparing to undergo scheduled procedures. During this evaluation, Dr. Scholz categorizes the seriousness of an inmate's condition and then prioritizes care and treatment of that condition pursuant to the Administrative Directives of the Department of Corrections. (Scholz Aff., Ex. 1, ¶21).
23. On Wednesday, June 27, 2007, Dr. Scholz performed such an evaluation of Mr. Bell's teeth and determined that tooth #18 needed to be extracted. Dr. Scholz noted that he would make it a priority, and did. (Scholz Aff., Ex. 1, ¶22).
24. On Tuesday, July 3, 2007, the next day Dr. Scholz worked at Western Illinois Correctional Center after evaluating Mr. Bell on June 27, 2007, Dr. Scholz extracted Mr. Bell's tooth #18 at 11:15 a.m. (Scholz Aff., Ex. 1, ¶23).
25. Dr. Scholz did not receive a copy of Mr. Bell's Illinois Department of Corrections Offender Grievance, dated October 19, 2007, as it appears in Plaintiff's Exhibit G attached to Plaintiff's Motion for Summary Judgment, d/e #26. (Scholz Aff., Ex. 1, ¶24).
26. On October 8, 2008, Dr. Scholz saw Mr. Bell for his biennial exam. At that time, Dr. Scholz noted the need for a filling in tooth #31. (Scholz Aff., Ex. 1, ¶25).
27. Mr. Bell's tooth #31 did not require a crown. (Scholz Aff., Ex. 1, ¶25).
28. A filling is not a Category I condition. (Scholz Aff., Ex. 1, ¶26).

---

[3]Plaintiff attempts to disputes this by pointing to Dr. Scholtz's responses to request for admissions. See plaintiff's exhibit B [26]. Plaintiff asserts that Defendants Scholz and Wexford have both already agreed and/or admitted that they were aware of three or four request slips. However, Dr. Scholz's admission was there were 3-4 relating to dental treatment. Wexford adopted the answer of Dr. Scholz.

9

29. Given the large number of inmates with Category I conditions, there is a waiting list for fillings. Mr. Bell was placed on that list and was #171[4]. (Scholz Aff., Ex. 1, ¶26).
30. Mr. Bell's need for a filling in tooth #31 was not an emergency condition and waiting to have his tooth filled did not put Mr. Bell's health in substantial risk of harm. (Scholz Aff., Ex. 1, ¶27).
31. In June of 2009, it appears that Mr. Bell was transferred from the Western Illinois Correctional Center. Dr. Scholz is no longer in contact with Mr. Bell and has no knowledge regarding the current status of his longstanding chronic periodontal disease and/or his gums or teeth. (Scholz Aff., Ex. 1, ¶28).
32. Dr. Scholz is not responsible for the Illinois Department of Corrections' grievance system, nor is he officially part of the grievance response procedure. (Scholz Aff., Ex. 1, ¶29).
33. Dr. Scholz does not have authority to, nor is he responsible for, establishing the procedures whereby inmates request medical and dental treatment at Western Illinois Correctional Center. (Scholz Aff., Ex. 1, ¶30).

Discussion and Conclusion

The court finds that Plaintiff is not entitled to summary judgment on his claim that Dr. S Scholz was deliberately to his periodontal disease. Bell has place no evidence in the record to establish that Plaintiff's longstanding/chronic periodontal disease was a serious medical need or that Dr. Scholz was deliberately indifferent. Bell first argues Dr. Scholz was deliberately indifferent to his longstanding/chronic periodontal disease because he did not perform the cleanings Plaintiff desired. Here, Bell has failed to establish that he has a serious medical need. Defendants acknowledge that the Seventh Circuit has previously found that dental care is one of the most important medical needs of inmates. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Defendants acknowledge that they are also aware that the Seventh Circuit has recognized that periodontal disease can be considered a serious medical condition. *See Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005). Defendants argue the facts in this case are distinguishable from *Wynn and Farnham*. It is undisputed that Bell suffers from longstanding/chronic periodontal disease. But, he has failed to establish that his particular case of periodontal disease constitutes a serious medical need and has offered no evidence that his condition posed a substantial risk of harm to his present or future health. *See Stevenson v. Scholz*, No. 07-3108, 2009 WL 790961, at *9 – 10 (C.D. Ill. March 23, 2009) (periodontal disease is not per se a serious medical need). When the party moving for summary judgment also bears the burden of proof at trial, that party cannot simply file a motion asserting bare allegations without evidentiary support and expect judgment to be entered in his favor. *See Keri*, 458 F.3d at 628.

---

[4]Plaintiff disputes this and points to a response to a grievance (Pl's Exh. H). This exhibit does not support his dispute that the backlog was due to a staff shortage. He also points to the ARB's response to plaintiff's grievance (Pl's Exh. I). The ARB does say the backlog is due to a staff shortage, but this can be used as an admission by Dr. Scholz. He did not make the statement.

There is no dispute that Mr. Bell was treated on several occasions by Dr. Scholz. At those times, Dr. Scholz did not considered Plaintiff's longstanding/chronic periodontal disease to be emergent and has indicated by and through his Affidavit that the condition as presented to him did not constitute a Category I condition. In Dr. Scholz's professional opinion as a dentist, Mr. Bell's longstanding/chronic periodontal disease did not pose an immediate risk of substantial harm nor did Dr. Scholz consider Mr. Bell's longstanding/chronic periodontal disease to be a serious medical need in need of immediate medical/dental treatment. Simply put, Mr. Bell's condition was chronic, not acute, most likely brought on by years of poor dental hygiene. Furthermore, there is no evidence that Dr. Scholz was deliberately indifferent to Plaintiff's serious medical needs. The Plaintiff was treated for his acute problems. In general, dentists do not provide dental cleanings, which take a significant amount of time, when there are other patients who have more serious problems that need to be addressed. Defendant Scholz was employed to provide dental care to inmates at the Western Illinois Correctional Center on a part-time basis and provided that care as best as he could to the inmates who needed his care and treatment most. Mr. Bell wanted his teeth cleaned. However, Dr. Scholz was not in a position to provide the requested cleaning given that there were many other patients who were in more urgent need of dental care. Dr. Scholz prioritized dental conditions pursuant to the Administrative Directives of the Department of Corrections. These Administrative Directives from the Department of Corrections categorize dental needs and conditions by Categories I through VI. The Administrative Directives require that dental care be provided in the order of seriousness. Category I conditions are considered "Emergency treatment," whereas Category VI conditions are defined as "No symptoms or apparent need for dental treatment related to the type of assessment or inspection performed."

Mr. Bell was informed that regular cleanings do not fall within Categories I or II. (See Responses to Plaintiff's grievances, Plaintiff's Exhibits D, E, G, H, and I, attached to Plaintiff's Motion for Summary Judgment [26]). Had Mr. Bell's longstanding/chronic periodontal disease become an acute rather than a chronic condition Dr. Scholz would have treated him for it. Simply stated, Mr. Bell's cause of action is based upon his preference that his longstanding/ chronic periodontal disease be treated immediately in a fashion that he prefers. Inmates, however, are not entitled to receive a specific course of care. The Eighth Amendment prohibits cruel and unusual punishment. The Eighth Amendment prohibits cruel and unusual punishment. It does not mandate that prisoners be provided with the best treatment available or the treatment of their choosing. *Anderson v. Romero*, 72 F.3d 518, 524 (7th Cir. 1995).

Plaintiff has not offered any competent evidence that his longstanding/chronic periodontal disease had risen to a level that posed a threat of serious harm to his present or future health. Further, Plaintiff has not offered any evidence that he had a Category I condition, an immediate need for a teeth cleaning. For that matter, Plaintiff has not offered any verifying medical evidence that his teeth were becoming worse without a professional cleaning. Dr. Scholz provided dental care to inmates and addressed their dental issues in order of significance to the best of his ability. The dental needs of patients who are incarcerated must be prioritized. Mr. Bell's longstanding/chronic periodontal disease did not rise to the level of an emergency and did not require immediate treatment by a dentist.

11

Plaintiff has failed to establish that his longstanding/chronic periodontal disease constitutes a serious medical need. Plaintiff has not offered any competent evidence to suggest that he has suffered harm as a result of the care and treatment provided to him. Furthermore, Plaintiff has failed to establish that Dr. Scholz acted with deliberate indifference towards his longstanding/chronic periodontal disease. Rather, the evidence clearly demonstrates that Dr. Scholz prioritized dental care according the Administrative Directives of the Department of Corrections. *See also Stevenson v. Scholz*, 2009 WL 790961.

Further, Plaintiff is not entitled to summary judgment on his Monell claim as no individual Wexford employee can be held liable for violating Plaintiff's constitutional rights. As already discussed, this case is proceeding under this court's February 20, 2009 Merit Review Order which stated Plaintiff had one claim under the Eighth Amendment, deliberate indifference to serious medical (dental) needs. This Court's Order specified that "any claims against the defendants in their official capacity are stricken." In Section B of Plaintiff's Motion for Summary Judgment [26], he seeks to impose liability upon Dr. Scholz and Wexford under a municipal liability/Monell theory. As this claim was not a part of the Merit Review Order, Section B of Plaintiff's summary judgment motion is denied. In addition, any claim against Dr. Scholz in his official capacity was stricken by this Court's Merit Review Order. Dr. Scholz is not a policymaker. He is not responsible for the Illinois Department of Corrections' grievance system, nor is Dr. Scholz officially part of the grievance response procedure. Dr. Scholz does not have authority to establish or responsibility for establishing the procedures whereby inmates request medical and dental treatment at Western Illinois Correctional Center. Thus, Plaintiff's claim fails. As to Wexford, Plaintiff has offered bare allegations regarding the policies, practices, and customs of this Defendant. Plaintiff acknowledges that the contract between Wexford and the Illinois Department of Corrections does not require a dental hygienist to be on site at Western, and yet offers this as evidence of Wexford's deliberate indifference. Plaintiff then alleges, without evidentiary support, other than his unsupported affidavit on the issue, that Defendant is responsible for providing a system whereby an inmate can sign up for and receive emergency dental treatment. Plaintiff has not met his burden and therefore his motion is denied.

Furthermore, even if Plaintiff has properly alleged a Monell claim against Wexford, summary judgment must be denied as no individual Wexford employee can be held liable for violating plaintiff's constitutional rights. Defendant Wexford is correct that it cannot be held liable for the constitutional violations of its employees under a theory of *respondeat superior*. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). Liability attaches to Wexford if 1) an express policy caused the constitutional deprivation; 2) a widespread practice existed "so permanent and well-settled as to constitute a custom or usage within the force of law"; or 3) a person with "final policy-making authority" caused the constitutional deprivation. *Billings v. Madison Metropolitan School Dist.*, 259 F.3d 807, 816 (7th Cir. 2001), *citing McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). There is no respondeat superior liability under § 1983. "For purposes of § 1983, we have treated a private corporation acting under color of state law as though it were a municipal entity." *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002); *see also Woodward c. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). "Municipal liability for constitutional injury can only follow from

12

a finding that the municipal employees who acted are liable on the underlying substantive claim." *Jackson*, 2006 WL 1554075, at *12 (*citing Treece v. Hochstetler*, 213 F.3d 363 (7th Cir. 2000)). "If the plaintiffs suffered no constitutional injury at the hands of the individual officers, the fact that custom, policy or practice may have authorized unconstitutional arrests 'is quite beside the point.'" *Id*. (*quoting City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). In other words, Monell claims against a municipality or corporation do not survive if no employee is found liable for violating the plaintiff's constitutional rights. *Heller*, 475 U.S. at 799; *Estate of Allen v. City* of *Rockford*, 349 F.3d 1015, 1022 n.9 (7th Cir. 2003); *Woodward*, 368 F.3d at 929; *Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002). Plaintiff's summary judgment motion fails to establish that Dr. Scholz was deliberately indifferent to Mr. Bell's serious medical (dental) needs. Without a constitutional violation, Plaintiff's Monell claim necessarily fails.

Plaintiff is not entitled to summary judgment as to his toothache in June of 2007. There is no evidence that Dr. Scholz was deliberately indifferent to Plaintiff's toothache in June of 2007. Plaintiff argument that Dr. Scholz was deliberately indifferent to his tooth ache in June of 2007 is not supported by the facts. According to Plaintiff, he filed a request slip for dental care on June 18, 2007. The request slip states that Plaintiff was experiencing a tooth ache and desired an extraction. This request slip was not received by the health care unit at Western Illinois Correctional Center until Monday, June 25, 2007. Contrary to Plaintiff's claims, this was the only request slip received by Dr. Scholz in June of 2007 and the only request slip received by him at any time related to a tooth ache. In June of 2007, Dr. Scholz was contracted to work 16 hours a week at Western Illinois Correctional Center. He worked on Tuesday and Wednesday of each week. Following the health care unit's receipt of Mr. Bell's request slip on June 25, 2007, the first day Dr. Scholz worked was Tuesday, June 26, 2007. Upon receipt of an inmate request slip, it is Dr. Scholz's usual practice to put an inmate on the call list to be evaluated the following day. According to Plaintiff's affidavit, paragraph 55, Exhibit A [26], he was sent a call pass to come to the dental office on June 26, 2007, but for unknown reasons the call pass was canceled. Plaintiff's affidavit that a call pass was sent on June 26, 2007, is consistent with Dr. Scholz's usual practice of placing an inmate on the call list to be evaluated the day after receipt of a request slip. Why he was not seen on June 26, 2007 is not known. However, as this is Plaintiff's summary judgment motion, all inferences must be drawn in Dr. Scholz's favor. Here, the reasonable inference is that something other than deliberate indifference, such as another emergency or administrative oversight, was the reason the Plaintiff's call pass was cancelled and he was not seen on June 26, 2007. Contrary to Plaintiff's assertion, Defendants have not acknowledged receiving three or four request slips in June of 2007. Dr. Scholz has acknowledged he is aware of three or four contacts relating to dental care. Dr. Scholz has not specified when he was made aware of those contacts or the substance of those contacts. Dr. Scholz has affirmatively stated he only received one request slip in June of 2007.

The court finds that Dr. Scholz responded promptly and appropriately to that request. Dr. Scholz also worked on Wednesday, June 27, 2007. (AMF ¶21). In order to maximize his time, after providing local anesthesia to inmates who are preparing to undergo scheduled procedures and while waiting for their mouths to numb, Dr. Scholz evaluates other inmates who have requested treatment. It is during this evaluation that Dr. Scholz categorizes the seriousness

13

of an inmate's condition so that he can prioritize care and treatment of that condition pursuant to the Administrative Directives of the Department of Corrections. On Wednesday, June 27, 2007, Dr. Scholz performed such an evaluation of Mr. Bell's teeth and determined that tooth #18 needed to be extracted. Dr. Scholz's notes reflect that he would make it a priority, which is exactly what he did. The next day that Dr. Scholz worked at Western Illinois Correctional Center was Tuesday, July 3, 2007. That day, at 11:15 a.m., Mr. Bell's tooth #18 was extracted. Mr. Bell's toothache in June of 2007 was handled in a prompt manner. As noted above, there were many inmates at Western Illinois Correctional Center with Category I conditions during this time frame. Dr. Scholz was following the Administrative Directives of the Illinois Department of Corrections to prioritize care and treatment pursuant to the seriousness of an inmate's condition. Shortly after receiving the request slip, Plaintiff was evaluated and shortly thereafter, Plaintiff's tooth was extracted. Dr. Scholz is entitled to summary judgment as he was not deliberately indifferent to Plaintiff's toothache in June of 2007.

Plaintiff claims he filed an emergency grievance on June 21, 2007 with the Illinois Department of Corrections requesting dental care. On its face, Plaintiff's Exhibit J attached to his Motion for Summary Judgment [26] shows that Mr. Bell signed the emergency grievance on June 21, 2007. However, Exhibit J indicates that the Illinois Department of Corrections' Chief Administrative Officer received the grievance on June 29, 2007, two days after Dr. Scholz had evaluated Mr. Bell's teeth and determined that an extraction was necessary and prioritized that care for July 3, 2007. Plaintiff's Exhibit K [26] shows that the Illinois Department of Corrections Grievance Officer received the June 21, 2007 grievance on July 3, 2007, and concluded that the issue was moot as the tooth had already been pulled. There is no evidence that Plaintiff's grievance put Dr. Scholz on notice of Mr. Bell's need or had any impact whatsoever on the care provided. As Plaintiff has put forth no evidence to support his claim that Dr. Scholz was deliberately indifferent to Mr. Bell's serious medical (dental) needs in June of 2007, Plaintiff's summary judgment motion is denied.

Further in Section D of his summary judgment motion [26], Plaintiff argues that Dr. Scholz was deliberately indifferent to his need for a filling which was diagnosed at his October 8, 2008, biennial exam. (Plaintiff's Motion for Summary Judgment, § D, pg. 20). The burden clearly rests upon Mr. Bell to show that Dr. Scholz violated his constitutional rights protected under the Eighth Amendment. Plaintiff has not offered any evidence that his need for a filling is a serious medical need. Rather, Plaintiff states that he "believes that the tooth can no longer be filled." That it will "probably cause severe pain" and in the future will "perhaps [require] further extraordinary invasive treatment." Plaintiff's bare assertions and speculation without evidentiary support are insufficient for judgment as a matter of law to be entered in his favor. *See Keri*, 458 F.3d at 628. Furthermore, the undisputed material facts show that Mr. Bell was in fact seen on October 8, 2008, for his biennial exam. At that time, Dr. Scholz noted the need for a filling in tooth #31. The record before the court shows Mr. Bell's tooth #31 did not require a crown and that a filling is not a Category I condition. There are a large number of inmates at Western Illinois Correctional Center with Category I conditions, and thus there is a long waiting list for fillings. Bell was placed on that list and was #171. (AMF ¶29). Bell's need for a filling in tooth #31 was not an emergency condition and waiting to have his tooth filled did not put Mr. Bell's

14

health in substantial risk of harm. As already noted above, Dr. Scholz operated under the Administrative Directives of the Department of Corrections. Accordingly, he had to prioritize his care and treatment of inmates with the worse conditions to those in the best condition. The fact that he did not receive a filling between October 2008 and the time he left Western is not indicative of deliberate indifference, but rather is indicative of the number of inmates with more emergent, Category I, conditions and the large number of inmates with cavities in need of fillings.

Finally, in June of 2009, as Mr. Bell was transferred from the Western Illinois Correctional Center, Dr. Scholz is no longer in contact with Mr. Bell and has no knowledge regarding the current status of his teeth and/or his need for a filling in tooth #31. Dr. Scholz cannot be held liable for the lack of a filling when he has no power to provide that filling after Plaintiff has left the facility at which he works. As there is no evidence Plaintiff's need for a filling was a serous medical need or that Dr. Scholz was deliberately indifferent, Plaintiff is not entitled to summary judgment on Section D of his Motion for Summary Judgment.

Based on the foregoing,

1. Pursuant to Fed. R. Civ. P. 56, the Plaintiff's summary judgment motions [26] is denied. Based on the record before this court, sua sponte, Defendants Dr. Scholz, Wexford and Michael Pritchard are granted summary judgment. Defendants' summary judgment motion [63] and Plaintiff's summary judgment motion as to Pritchard [57] are rendered moot. The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff at the close of this case.
2. If the plaintiff wishes to appeal this order, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).

Enter this 30th day of March 2011.

\s\**Harold A. Baker**
_____
Harold A. Baker
United States District Judge